# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:12-CR-252-B |
| | § | |
| LAWRENCE EDWARD KNOX, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Lawrence Edward Knox seeks to suppress all evidence seized as a result of the warrantless search of Knox's trash on July 27, 2012, arguing the search was unreasonable and thus violated his Fourth Amendment rights. The Court held a hearing regarding Knox's Motion to Suppress Evidence (doc. 20) on November 1, 2012. Specifically, Knox moves the Court to suppress the cocaine and other property seized from his garbage, house, and yard along with any statements made to government agents. For the reasons stated on the record and set forth herein, Defendant Knox's Motion to Suppress is **DENIED.**

## I.

## BACKGROUND [1]

Defendant Knox seeks to suppress all evidence stemming from the warrantless search of his trash on July 27, 2012. Knox argues that the government agent trespassed onto his property, within the curtilage of his home, when the agent seized the trash bag. Thus, this trespass constitutes a violation of the Fourth Amendment and Knox is entitled to suppression of all evidence stemming

---

[1]Unless otherwise noted, the facts are undisputed.

from the violation. In response, the United States argues first that the trash bag was not within the curtilage of the home, and second, that regardless of the Court's finding regarding curtilage, Knox had no reasonable expectation of privacy in the garbage set out for collection.

At the hearing, the Court heard testimony from Lieutenant Paul Smith, the government agent that seized Knox's trash. Having found Lieutenant Smith's testimony credible in all respects, the Court finds the following facts. Law enforcement officers received information that an individual had obtained cocaine from Knox's residence at 7516 Saddleridge Drive, Dallas, Texas. Lieutenant Smith went to Knox's residence on Thursday July 26, 2012 and observed a large rolling garbage cart sitting in the backyard without a lid. Upon further invetigation, Lietuenant Smith learned that garbage was picked up on Fridays, so he returned Friday July 27, 2012 around nine in the morning. On that Friday, Lieutenant Smith saw the same garbage cart without a lid sitting at the crest of the driveway of the home, close to the alley upon which service vehicles traveled.[2] Without a warrant, Lieutenant Smith stepped out of his truck and walked to the garbage cart without a lid in Knox's driveway. Smith took one step onto the driveway and reached down two feet into Knox's garbage cart, seizing a white trash bag. Smith then placed Knox's trash in the bed of his truck.

There is no dispute as to the physical placement[3] of the trash cart, only whether that placement was on Knox's private property or nor. Knox's counsel argued at the hearing and in his motion that the garbage cart was sitting on Knox's property within the curtilage of his home, while

---

[2] In Lieutenant Smith's affidavit used to obtain the search warrant he stated the trash cart was "in the alley." At the hearing there was a discrepancy as to what qualifies as the alley and what "in the alley" means. The Court finds that any inaccuracy in Lieutenant Smith's affidavit used to obtain the state search warrant was a matter of semantics and at worst a mistake, not a deliberate falsehood.

[3] The location of the trash cart is marked by a hand-drawn asterisk in Government Exhibit 6.

Lieutenant Smith and the United States maintain that same patch of land is just off of Knox's property, in the alley. Regardless of the exact location of Knox's property line, in finding Lieutenant Smith's testimony credible in all respects, the Court finds the trash cart was abutting the alley in a place clearly used for the collection of trash.

After collecting the white plastic garbage bag from Knox's trash cart, Lieutenant Smith took the bag of garbage to a government office where he searched it. He found small plastic baggies containing what looked to be cocaine residue and sent the baggies to a lab for testing. Once the results indicated there was cocaine in the baggies, Lieutenant Smith used this information and an affidavit to obtain a warrant to search Knox's residence. Upon execution of the search warrant, the government agents found cocaine, United States currency, firearms and other evidence. Def. Mot. Suppress at 3. Knox was placed under arrest, *Mirandized*, and then Knox made inculpatory statements, all of which Knox now seeks to exclude as evidence gathered from an illegal search in violation of the Fourth Amendment. *Id.*

## II.

## LEGAL STANDARDS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Fourth Amendment protection also "extends to protect the 'curtilage' of a home from unconstitutional searches." *United States v. Thomas*, 120 F.3d 564, 571 (5th Cir 1997) (quoting *United States v. Dunn*, 480 U.S. 294, 300 (1987)). A finding that an area is within the curtilage entitles that area to the same Fourth Amendment protections that are enjoyed by the home. *See Dunn*, 480 U.S. at 301.

But just because there is a search of curtilage without a warrant does not necessarily mean there is a Fourth Amendment violation. *See Katz v. United States*, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring). "[T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984) (quoting *Katz*, 389 U.S. at 516 (Harlan, J., concurring)). "The [Fourth] Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as 'reasonable.''" *Id.* (quoting *Katz*, 389 U.S. at 516 (Harlan, J., concurring)).

Here, the warrantless seizure and subsequent search of Defendant Knox's garbage would violate the Fourth Amendment "only if [the defendant] manifested a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988).

### III.

### ANALYSIS

The Supreme Court in *Greenwood* held that the Fourth Amendment does not prohibit "the warrantless search and seizure of garbage left for collection outside the curtilage of a home." 486 U.S. at 37. Knox relies on the language "outside the curtilage of a home" in attempting to distinguish the present case from *Greenwood*. Knox argues that the government agents trespassed onto the curtilage of Knox's property to seize the trash bag, thus distinguishing this case from *Greenwood* and establishing a violation of Knox's Fourth Amendment rights. Def. Mot. Suppress 4.

A.      *Curtilage Determination*

The Court first analyzes whether the garbage cart was within the curtilage of the home. The

curtilage is the area in which a person "reasonably may expect that the area in question should be treated as the home itself." *Dunn*, 480 U.S. at 300. The Court considers four factors in determining if an area outside the home is curtilage: "The proximity of the area to the home, whether it is within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from outside observation." *Thomas*, 120 F.3d at 571.

Here, as denoted by the red "x" on Government Exhibit 5, an aerial shot of Knox's home, the garbage cart was located at the end of the driveway where the driveway meets the alley behind the home. The first factor, proximity to the area of the home, weighs against finding that the cart was located within the curtilage. The cart was at the edge of Knox's property and, according to Lieutenant Smith's credible testimony, at least 10 yards away from Knox's garage. The cart was therefore not within close proximity to the home.

The next two factors similarly weigh against finding that the cart was located within the constitutional definition of curtilage. As to the second factor, the garbage cart was not within any enclosure nor was it behind a fence of any kind. Further, on Friday the garbage cart was moved from its position nearer to the house to its location at the edge of the driveway abutting the alley. The third factor, regarding the nature of the use of the area in question, also weighs against finding it within the property's curtilage; the only proffered use for this area was the collection of trash.

As to the last factor, the Court finds Knox did little to prevent the outside observation of his trash, and thus, this factor weighs against a finding of curtilage. The top to the garbage cart was missing and the cart was placed in an area for pickup by the garbage collector. The only protective measure in place was a closed trash bag placed in an open four-foot-tall trash cart.

After reviewing the above mentioned factors and the totality of the circumstances

surrounding the seizure of the trash bag, the Court finds that the area where the garbage cart was sitting fails to qualify as curtilage and thus is not entitled to the same Fourth Amendment protections as Knox's home.

B.    *Reasonable Expectation of Privacy*

Assuming, *arguendo*, that Knox had established the garbage cart was placed within the curtilage of his home, he still must establish a reasonable expectation of privacy in the trash cart and its contents to prevail on his Fourth Amendment claim. *See Oliver*, 466 U.S. at 177. Despite Knox's counsel's best efforts, the proper inquiry regarding a violation of the Fourth Amendment is whether Lietenant Smith violated Knox's reasonable expectation of privacy, not whether there was a trespass onto Knox's property. *United States v. Kramer*, 711 F.2d 789, 794 (7th Cir. 1983). Knox's possessory interest in his land was infringed by Lietenant Smith's one or two foot trespass, "[b]ut the Fourth Amendment does not protect possessory interests in land." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978).

Thus, in order to prevail, Knox must establish "a subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *Greenwood*, 486 U.S. at 39. Unfortunately for Knox, he is unable to do so. First, Knox submitted no evidence to support his own subjective expectation of privacy in his garbage; in fact the evidence points to the contrary conclusion. The garbage cart was moved to the edge of his property, exposed to the alley. The only reasonable inference from the trash cart's placement at the property's edge was that it was done in order for the trash to be taken away by a third party– the garbage collector. By placing his garbage in the garbage cart next to the alley, Knox exposed his garbage "to the public sufficiently to defeat [his] claim to Fourth Amendment protection." *Greenwood*, 486 U.S. at 40. Because Knox placed his garbage "in

an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," Knox could have "no reasonable expectation of privacy in the inculpatory items" that were discarded, whether located within the curtilage of his home or not. *Greenwood*, 486 U.S. at 40-41 (quotations omitted).

The analysis in *Greenwood* turned on "whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992). While no Fifth Circuit case has weighed the issue, at least the Eighth, Tenth, and Eleventh Circuits have agreed that the proper analysis to determine whether there was a reasonable expectation of privacy in one's garbage does not turn on the curtilage determination, but instead focuses on the public's accessibility to the trash. *Comeaux*, 955 F.2d at 589 (8th Cir. 1992); *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999) ("Even if we were to conclude that the trash bags were within the curtilage, Defendant would not prevail. Whether the officers violated the Fourth Amendment does not depend solely on curtilage."); *United States v. Segura-Baltazar*, 448 F.3d 1281, 1287 (11th Cir. 2006). The Court concludes that in this case Knox sufficiently exposed his trash to the public to extinguish any Fourth Amendment expectation of privacy when he wheeled the trash cart to the edge of his property abutting the alleyway.

In his written Reply and through counsel at the hearing, Knox directs the Court's attention to two cases examining Fourth Amendment rights. Both cases are distinguishable from the case at hand. First Knox discusses *Williams*, a case where a federal agent crept through woods crossing boundaries and a broken fence in order to get to a place where he could smell the suspect distilling moonshine whiskey in his home and thus have probable cause to obtain a warrant to search the property. *United States v. Williams*, 581 F.2d 451, 453 (5th Cir. 1978). The Circuit held that because

the agent smelled the odor while outside the curtilage, the furtive trespass did not violate the Fourth Amendment. *Id.* at 455. *Williams* does not hold that a trespass into the curtilage would violate the Fourth Amendment. *Id.* Thus, *Williams* offers no support for Knox's position. Furthermore, *Williams* was decided in 1978 and it was not until the Supreme Court decided *Oliver,* 466 U.S. 170, in 1984, formally adopting Justice Harlan's concurrence in *Katz,* 389 U.S. 347, that the Fourth Amendment jurisprudence shifted away from trespass to a reasonable expectation of privacy, which is the proper inquiry today. And on a more basic level, there is a real difference between private activities taking place inside someone's home, such as distilling moonshine in *Williams,* compared to Knox placing his trash near the alley for collection.

Next Knox cites a case in which government agents unreasonably searched a plane in violation of the defendants' Fourth Amendment rights by climbing onto the wings to peer through the windows in an attempt to establish probable cause for a warrant. *United States v. Amuny,* 767 F.2d 1113 (5th Cir. 1985). Important to the Fifth Circuit's reasoning in determining the search was unreasonable was a finding that the defendants "possessed a reasonable expectation of privacy as to the interior of the plane." *Id.* at 1128. The defendants' conduct "demonstrated that they intended and attempted to maintain their privacy rights in the interior of the aircraft." *Id.* The defendants curtained the plane windows, closed the passenger door, locked the cargo door, and parked the aircraft in a place few people visited. *Id.* In the case at hand, Knox put his trash in a garbage cart and placed the cart at the edge of his property for it to be taken away by a third party garbage collector. Unlike the defendants in *Amuny,* Knox did nothing to establish a subjective expectation of privacy in his trash. In fact, Knox placed the garbage in a place where it was certain to be taken by the third party trash collector.

## IV.

## CONCLUSION

In conclusion, even if the placement of the garbage cart was within the curtilage of Knox's home, which this Court does not find, his Fourth Amendment claim fails as Knox did not demonstrate a reasonable expectation of privacy in the garbage seized by government agents. Therefore, Knox's Motion to Suppress (doc. 20) is **DENIED**.

SO ORDERED.

DATED November 5, 2012.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE